And we'll turn to counsel in Adecco USA v. Columbia Forest Products. Good afternoon, Your Honors. Alan Pierce for Appellant Adecco USA. There really are only two issues on this appeal. The first is whether this court should exercise its well-established discretion to address an issue not raised by the appellant in the district court. And the answer is yes, because it's a pure question of law, and there would be substantial— Why is it a pure question of law? Isn't there a question as to whether the injured worker was operating the wood chipper or not? No, Your Honor, I submit there is not. This record very well establishes the undisputed fact that he was operating the wood chipper. Now, his job is wood chipper operator, but I'm not sure what that even means exactly. What is there in the record as to his duties and what he was doing at that particular moment that he was injured? There isn't much in the record about exactly what he was doing at the moment. Wasn't that a problem, if what we're going to say is that there's an indemnity because he was operating a wood chipper, when one way of reading this is the wood chipper is just humming along. He's down on the ground or something, sweeping up and throwing things in. He's underneath the apparatus of the pulleys and the chains, and his arm gets pulled up that we have to look at exactly what he was doing, but the defendant is the one that called him a waste tender slash chipper operator. You're the one who didn't . . . the reason there's no record on this is because your argument below didn't go to what he was doing or whether he was operating machinery. Your argument was an entirely different argument based on an entirely different section of the contract. Correct, Your Honor. Correct, but there was record evidence. We start with the opening memorandum of law in support of summary judgment by the defendant that specifically says he was injured while operating the wood chipper. That was under their heading of undisputed facts. The district court adopted that statement almost verbatim, word for word, and said in its facts section of the decision that he was injured while operating the wood chipper. There's a lot of . . . a totality of evidence that shows that in their emails to my client, the defendant said his job is waste tender slash chipper operator. There's deposition testimony from a DECO. That's what his job is that's submitted. There's the accident report that the defendant did the day after the accident in which they say his job is chipper operator. That's what they say. I think there are a lot of things that are taken for granted in a case when they're not really being put in issue or where nobody thinks that's what we're talking about because we're talking about something entirely different. The record might look very different if parties are alerted that the whole case is different because he's operating equipment. I agree with that hypothetically. In this case, they're the ones that took it out of dispute because they said it was an undisputed fact and the record supports their statement that that's what his job was. The district court said so as well. We didn't dispute that statement so there is no dispute in the record as to what his job was. To now want to go back and on top of that, Your Honor, they recognized the argument we're making now and they say, well, we mentioned it. They did more than mention it. They talked about it in both their opposition memo of law and their reply and they said, well, they aren't really raising this issue but if they did and here's why. That's not an argument, well, he wasn't really operating the wood chipper. They raised this argument as an alternative and still you didn't even in a reply brief say oh, my God. They say we intentionally, nobody would intentionally not make this argument. Unfortunately, the trial counsel for Adecco missed it, it was a mistake but there's no reason to create more litigation over a mistake when the record is very clear here and we meet the standards. As far as I can tell, each member of this panel has been on a case where you've applied this discretion and in fact, I can't find a Second Circuit case where the court says, well, okay, it's a question of law and there's substantial injustice but we're not going to apply the standard. In fact, in the Merrill Lynch case, the court said, well, we're not really sure that Merrill Lynch has got substantial injustice but it's a pure question of law. In their brief, Columbia Products basically comes back and says, well, if you really are going to follow this then you got to send it back for a fact-finding issue about whether he was truly operating the chipper. Nobody's really going to know. He has no memory given the traumatic injury that he received. Nobody else was in the room at the time of the accident, exactly what he's doing. So you could send it back to create a phantom record that's really not going to get created and more importantly, there's no reason to. It's Columbia Forest Products who has made this an undisputed question, undisputed fact that that's his job. And at that precise moment that he's injured, I'm sorry, Your Honor. How do we know no one was in the room? That's my recollection of the record here, that nobody else was in there. In fact, they were outside and somebody got alerted that the conveyor wasn't moving anymore and they came in and they found Mr. Fortin hanging there by, you know, what was left of his arm on the pulley system. Did somebody say that prior to the accident nobody was in the room? At the time of the accident, which I believe was kind of the operative time, my understanding is, and I could be corrected, but I don't, I think it's correct. The record establishes he was in there alone. Nobody was observing him. Who says that? I don't recall, Your Honor. I apologize. And my point would be, you can't just look at that moment in time when his arm got caught. What was he doing right then? No. What was his job? And they said his job was waste tender, chipper operator. And in fact, in the accident report, I don't even think they used the words waste tender. They used the word chipper operator. The fact that it's somebody's job doesn't mean he was doing it at the time. Well, like I said, Your Honor, I think it's inappropriate to say at the moment his arm got caught exactly what he was doing. Was his overall job waste tender slash chipper operator? That's completely established on this record. There is no question about it. And quite frankly, they have to establish that the district court's finding, based on their memo of law and the facts in the record, is clear error. There's no basis to find that it's clear error here. I know it's not truly a factual finding, like after a trial, but . . . I mean, clear error, what he was doing at the time? Yeah. That he was injured? Wait a minute. I thought the point was, should we exercise our discretion to look at an issue that was enraged? Yes. It is. But the main argument against doing that is that it's not a pure question of law. And I submit it is a pure question of law because the record leads to only one conclusion. He was operating . . . On a record undeveloped because there was no need to develop it. And I submit that's the defendant's fault because they started with the preposition that he was operating the wood chipper when he was injured. And that was adopted by the district court. So . . . Thank you. Thank you. You've reserved two minutes. Yes. Thank you. Mr. Garone? May it please the Court, Michael Garone for the Appellee Columbia Forest Products. With me is Thomas McCormick, who is my co-counsel on appeal and was also the trial attorney in the district court. ADECO concedes that it made no claim in the district court that Mr. Fortin, the injured worker, was operating equipment at the time of his injury, or that the defendant hold harmless language in the contract applied. ADECO also concedes that it has completely shifted position on appeal and raised an issue for the first time that it could have raised below. This was a one-page contract, and I think that they could have recognized the fact that this language, in their view, might have been irrelevant, but they didn't do so. The only excuse offered is that somehow the trial attorney missed the notion that Mr. Fortin was operating equipment. Now, counsel is correct that this court has on occasion exercised discretion to consider issues that were raised for the first time on appeal. However, that's the exception, not the rule. The preservation rule is an important rule to the administration of justice, and certainly in this case, we're prejudiced by the fact that for the first time in the appellate brief, we've learned that ADECO now claims that Mr. Fortin was operating equipment at the time of his injury, something that we had no clue about and the district court had no clue about. Well, I don't understand. You did state that, did you not, that the employee was, quote, operating a wood chipper? It was you who wrote that. Yes. Your side. Your Honor, but you have to understand that the complaint in this case alleged that Mr. Fortin was acting as a waste tender at the time of his injury, and the answer admitted that. And then in the brief that we made in support of the motion for summary judgment, there was an inadvertent misstatement, and that misstatement, as has been recognized, was later corrected in the appellate briefing, or the, excuse me, the summary judgment briefing, where counsel for Columbia Forest Products plainly stated that Mr. Fortin was not operating equipment. And I would submit there is no evidence in the record that he was operating equipment other than the inadvertent statement of counsel, which was not based on any evidence. The statement that counsel made was based upon an undisputed material fact, number 56, which merely said that there was a serious injury that was sustained on February 11th, 2014. So, there's no evidence in the record other than the so-called admission. But it is pretty odd to make such an admission, right? Or to say that he's operating a wood chipper, why would you say that? Because he was classified, Your Honor, as a waste tender slash chipper operator, and it was unfortunate, but by the claim as alleged in the complaint, there was no relevance to what Mr. Fortin was doing at the time of his injury. The only issue that they raised was that we somehow breached the supervision and safety provision of the contract, and therefore, the only thing that was relevant was whether there might have been an OSHA violation. It was not relevant at all to this case, what he was doing at the time of his injury. Anything in the record about how the wood chipper operates? There's very little, Your Honor. I think you made the point that there's two rooms to the chipper room. There's the upper room, which is where the chipper actually is, which is a set of rotating knives that takes veneer and chips it into small pieces for use as fuel. That is where, theoretically, one would be operating the chipper. But there's not a lot of evidence in the record since no one ever raised it. That is to say, is there some person who flips a switch that turns it on and off? And whether that person is Mr. Fortin? Is there some evidence about what is involved in operating a wood chipper? Your Honor, excuse me, I didn't mean to interrupt, but had we been notified that that was their position, we would have put on all that evidence. The fact of the matter is, there is abundant evidence that he was cleaning up waste, sweeping up under the return belt, not in the lower room, which is, again, there's nothing in the record as to how far it is from the actual chipper operator station. But the evidence is from Adeko's brief, and there are numerous statements in the brief that JA 104 to 105, JA 92 to 93, and even in their appellate brief on page 7, they state what he was doing at the time of his injury was sweeping up wood debris that had fallen off the belt. What I'm getting at is, I guess, I don't know how a wood chipper works. I don't know that these are two separate rooms and how far separated they are. And evidently, they're not separated enough that his arm doesn't get caught in the mechanism of the conveyor belt, which either is or isn't part of the wood chipper. I don't know, you referred to a chipper operator station. I don't know where that is, and I'm not, maybe there's something in the record about that. Or maybe you're just referring to something you know from having visited the factory. I don't know. Well, there is some evidence in the record, Your Honor. But really, this underscores the prejudice to my client of having something raised for the first time in the appellate brief. Had this been, even a hint of this, been raised in the district court, we would have developed the evidence in this. But the evidence that does exist, there were investigation reports and so on, shows that this is a multi-level chipper room. And at the upper level, I believe there's evidence in the record that there are areas where you can shut on and shut off and turn on the chipper. And Mr. Fortin was cleaning up debris, that's what he was doing. Now, I would say under any common sense use of the term operate, one who is cleaning up wood debris is not operating the machine. And so this is something that, I think what's happening here is they're trying to switch the burden of proof on us to show what he was doing. But in actuality, they're the ones that frame the issue in the pleadings. And the issue that they framed in the pleadings was simply that we didn't provide for the safety and supervision of Mr. Fortin. And had we gotten any notice, any idea that they were making an allegation that he was operating machinery or that the defend and hold harmless language applied, we would have certainly put on the record all of those facts. And again, it underscores the importance of preservation. If the employee was, in fact, using a wood chipper at the time of the accident, you would agree, would you not, that the contract would require that you indemnify the plaintiff? I would say that the contract would require that we defend and hold harmless the plaintiff. And we raised below, and also in this court, that there may be a difference that we would want to pursue in the district court if this issue is somehow felt to be preserved about the difference between indemnity and defend and hold harmless. But in this particular case, again, I would keep going back to the fact that the only evidence that he was operating the chipper comes from the statement of trial counsel, which was not based on evidence in the record, it was a misstatement. And I would point you to the Hub Floral case from this court, which basically says that a statement in a memorandum of law is not a binding judicial admission. Especially in this case, where the so-called admission was never even relied upon by a DECO. If they had given us any indication that they were relying on this kind of offhand statement about the chipper, we would have corrected it more explicitly. As it is, we did correct it in our response to their motion for summary judgment, in which we plainly stated that while there's this other sentence in the contract, this other sentence wasn't relied on by a DECO, and certainly there was no evidence that Mr. Fortin was operating equipment. Now at that point, I think it was incumbent on a DECO to say no, there is evidence of Mr. Fortin operating equipment. The only other evidence that they rely on, other than the statement of counsel below, is the fact that his job classification is waste tender slash chipper operator. Well, just because your job classification is something doesn't mean you are doing that task when you're injured. If I'm a truck driver and I get injured walking to my supervisor's office for a discussion with my supervisor and I trip and fall, have I been injured operating a truck? Obviously not, and so really, the only evidence that they rely on, again, is the statement of counsel, and then the evidence that his job classification was waste tender slash chipper operator. Now in their complaint, they allege only that Mr. Fortin was a waste tender, which is what he was doing at the time of his injury. He was tending the waste that was falling off the chipper, or the conveyor system. And in our answer, we admitted that allegation. So as far as we're concerned, that's kind of final by operation of law, and that's where the court should be going with this, is that really the evidence is uncontradicted that he was acting as a waste tender. Ms. Favreau of ADECO says in her affidavit that I was not aware he was working as a waste tender, or for that matter, that the position of waste tender existed. I was not aware of anyone from ADECO being aware of this position or of Mr. Fortin's placement in this position. On the other hand, the accident report says the job title is chipper room operator, whatever that means. I suppose all of this goes to your point that there's a certain confusion about this. Well, and again, Your Honor, it doesn't really matter what the job title is. The issue under this contract is what was he doing at the time of his injury? Was he operating equipment? And under any fair reading of the term operate, I don't see how you can take a guy who's got a shovel and he's sweeping up debris and say that he's operating the equipment. And as I stated several times, we have been really severely prejudiced here, because we would have settled all these so-called facts that are being bandied about. And I would again point you to the joint appendix citations where they stated several times exactly what he was doing at the time of his injury, which was sweeping up. Thank you, Mr. Gore. Thank you, Your Honor. Mr. Pierce, you've reserved two minutes. Yes. Thank you, Your Honor. Let me start with counsel relies on the general rule. I know that's the general rule, but this court has uniformly and regularly applied this exception that we're relying on. It's not new. As I said, all of you have been on panels or written opinions where you applied it when those standards were met. And I said, even in Merrill Lynch, they didn't have to be any substantial. The question is whether the standard is, there's a general rule, there's an exception. The question is whether the exception applies. Which is why it all comes down to whether or not this record undisputably shows that he was, that Mr. Fortin was injured while he was engaged as a chipper operator or operating the wood chipper. And again, I don't think we can pinpoint that precise moment. You look at what Columbia Forest Products repeatedly, on numerous occasions in this record, said his job was. And it's that. But that's something different than what your people said his job was. Well, they didn't have access to all of that then. Of course they didn't. That's the whole point. If there was a record that established how this machine works, who turns it on and off, what is involved in turning it on and off, is the person who turns it on and off the same person as the one who sweeps up underneath it and throws stuff back on the conveyor belt? I mean, that could be, I mean, talk about truck drivers. If you're driving a truck and you leave the engine on and you get out and start cleaning out some obstruction under the wheels and you didn't put the emergency brake on, you get run over. It's reasonable to say you're injured while operating the truck. On the other hand, if you're not the truck driver, but you're somebody who's assigned to do some kind of cleanup and you go underneath the truck, that's a different story, and we don't know what- Right, if I'm a janitor at that plant and somebody says, hey, will you go move that truck? I'm not a truck driver. This man was classified as a waste tender slash shipper operator. I just want to say two things. He talks about they had no reason to raise the hold harmless language we now rely, but they did address it. On pages 152 of the appendix and on pages 168 and 169, they addressed the actual argument I'm making. You know why? because they knew that was the right argument that my client should have been making, that the trial counsel should have been making. And they kind of poo-pooed it, but they addressed it. There certainly is no prejudice when they actually address the argument I'm making on appeal. Thanks very much, Mr. Pierce. And hub floral is clearly distinguishable where you have an affidavit from the client. Thank you, your honor. We reserve the decision. We'll turn to.